```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
 TONYA T. AROKIUM,

                    Plaintiff,            MEMORANDUM & ORDER
                                             21-CV-4698(EK)
            -against-

 KILOLO KIJAKAZI,

                    Defendant.
-------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff Tonya Arokium challenges the Social Security Administration's denial of her claim for disability insurance benefits. Before the Court are the parties' cross-motions for judgment on the pleadings. For the following reasons, I grant the Commissioner's motion and deny Arokium's motion.

## I. Background

### A. Procedural Background

In August 2019, Arokium applied for disability benefits, originally alleging a disability onset date of August 1, 2010. Administrative Tr. ("Tr.") 13, 79, ECF Nos. 12, 13. The agency denied her claim. *Id.* at 13, 100-05, 114-19. On November 2, 2020, an administrative law judge ("ALJ") held a hearing on Arokium's claim. *Id.* at 13, 30-78. The ALJ, Jason Miller, concluded that she was not disabled and therefore not entitled to disability benefits. *Id.* at 13-24. The agency's

Appeals Council denied Arokium's request for review of the ALJ's decision, rendering it final.  *Id.* at 1–6.  Arokium timely sought review of that decision in this Court.  ECF No. 1.

**B.   The ALJ's Disability Evaluation**

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims.  20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity.  *Id.* § 404.1520(a)(4)(i), (b).  If not, then at step two, the ALJ evaluates whether the claimant has a "severe impairment" — that is, an impairment or combination of impairments that "significantly limits" her "physical or mental ability to do basic work activities."  *Id.* § 404.1520(a)(4)(ii), (c).  If the ALJ identifies such an impairment, then at step three, he must determine whether it meets or equals one of the impairments listed in Appendix 1 of the regulations — the "Listed Impairments."  *Id.* § 404.1520(a)(4)(iii), (d); *see also id.* pt.

404, subpt. P, app. 1.  If it does, the ALJ will deem the applicant disabled.  *Id.* § 404.1520(a)(4)(iii).

      At the outset, ALJ Miller determined that the correct alleged onset date was not August 1, 2010 — as Arokium had stated in her application — but rather August 13, 2013.  *Id.* at 13-14.  This is because, the ALJ reasoned, Arokium had previously applied for disability benefits, but received an unfavorable decision from a different ALJ, with a decision date of August 12, 2013.  *Id.* at 13.  Arokium's request for review of that prior ALJ decision was denied by the Appeals Council, and she did not appeal it to a federal court.  *Id.*  Accordingly, the ALJ concluded, that August 12, 2013 ALJ decision "remains final and binding," and "the claimant cannot be considered for benefits" on or before that decision's date.  *Id.*  At the hearing, Arokium's counsel did not dispute ALJ Miller's analysis and confirmed she was alleging a disability onset date of August 13, 2013.  *Id.* at 35-36.  Arokium likewise does not challenge the amended onset date here.

      Turning to the five-step analysis, the ALJ determined that Arokium had not engaged in substantial gainful activity between August 13, 2013 and her date last insured on December 31, 2015.  *Id.* at 16.  The ALJ also determined that Arokium suffered from the following severe impairments: "Degenerative disc disease of the cervical and lumbar spine" and "degenerative

joint disease of the left shoulder." *Id.* The ALJ concluded, however, that neither of these impairments rose to the level of a Listed Impairment. *Id.* at 17.

When the ALJ finds that a claimant has severe impairments that do not meet the requirements of the Listings, he must determine the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4)(iv), which is the most she can do in a work setting notwithstanding her limitations. *Id.* § 404.1545(a)(1). The ALJ concluded here that Arokium had the RFC to perform a "range of medium work," with certain limitations. Tr. 17. She could lift or carry fifty pounds occasionally and twenty pounds frequently; could "only frequently reach overhead with the left upper extremity"; and could "only frequently crawl." *Id.* The ALJ assessed "no limitation to sit, stand, or walk" in an eight-hour workday, "outside of normal work breaks." *Id.*

At step four, the ALJ considers whether, in light of the RFC determination, the claimant could perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (f). Here, the ALJ found that Arokium could perform her past work as a retail sales clerk. Tr. 23. As a result, the ALJ did not reach step five, which considers whether the claimant can perform jobs existing in significant numbers in the national economy. 20 C.F.R.

4

§ 404.1520(a)(4)(v), (g). Given that determination, the ALJ concluded that Arokium was not disabled. *Id.* at 24.

## II.  Standard of Review

A district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision, and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).[1] "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

## III.  Discussion

Arokium raises one primary argument on appeal. She asserts that the ALJ improperly evaluated the medical opinion evidence by favoring the conclusions of the testifying medical expert, Dr. John Kwock, over the assessment of her treating

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

5

neurologist, Dr. Osafradu Opam. Mem. of Law in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Mem.") 8-14, ECF No. 15. As a result, Arokium contends, the ALJ's RFC determination is not supported by substantial evidence. *Id.*

At the outset, the Court notes the relevant time period under review. To qualify for disability benefits, "a claimant must establish that [she] became disabled on or before the expiration of her insured status." *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 563 n.22 (S.D.N.Y. 2009); *see* 42 U.S.C. §§ 416(i), 423(c); 20 C.F.R. §§ 404.130, 404.315(a). "Evidence of an impairment that reached disabling severity after the expiration of an individuals' insured status cannot be the basis for a disability determination, even [if] the impairment itself may have existed before the individual's insured status expired." *Norris v. Barnhart*, No. 01-CV-0902, 2002 WL 31778794, at *4 (S.D.N.Y. Dec. 12, 2002); *see Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989) (plaintiff can prevail only "if [her] continuous disability began before [her date last insured]"). Here, Arokium alleged an amended disability onset date of August 13, 2013, and was last insured for disability insurance benefits on December 31, 2015. Tr. 14. As a result, she must show that she had a disability during that period to qualify for disability benefits.

6

A.   **Revised Regulations for Evaluating Medical Opinions**

For claims filed after March 27, 2017 (like Arokium's), the "treating physician rule" no longer applies. *See Schillo v. Kijakazi*, 31 F.4th 64, 71 n.1 (2d Cir. 2022); 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources.").[2] Thus, the opinion of a treating physician is no longer presumptively entitled to controlling weight. Instead, all medical opinions are assessed against the same set of criteria: "supportability," "consistency," "relationship with the claimant," "specialization," and "other factors," including familiarity with other evidence in the claim or an understanding of disability policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c)(1)-(5).

The first two factors above — supportability and consistency — are the "most important factors," *see id.* § 404.1520c(b)(2); accordingly, the ALJ is required to explain his consideration of them. *Id.* The regulation does not explicitly require the ALJ to explain his consideration of the remaining factors. *Id.* These are not especially formalistic

---

[2] The regulation that contained the treating physician rule was repealed on January 18, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(c), 416.920c(c) (effective March 27, 2017).

7

requirements.  In the end, an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," so long as he has weighed "all of the evidence available to make an RFC finding that was consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Moreover, in making an RFC determination, the ALJ is entitled to resolve "[g]enuine conflicts in the medical evidence."  *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).  Thus, where the opinions of two medical professionals conflict, the ALJ has the discretion to "choose between properly submitted medical opinions."  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

**B.   Medical Opinions and the ALJ's Evaluation**

Arokium's appeal focuses on the two medical opinions in the record: one provided by Arokium's treating neurologist, Dr. Opam, and the other offered by the testifying medical expert, Dr. Kwock.[3]  As the ALJ noted, Dr. Opam and Dr. Kwock reached vastly different conclusions as to the extent of Arokium's limitations.

---

[3] The transcript of the November 2020 hearing identifies the medical expert's last name as "Clark."  Tr. 31.  Based on the ALJ's decision and Dr. Kwock's curriculum vitae, this appears to be a transcription error.  *Id.* at 22-23, 499-501.

8

Dr. Opam's opinion took the form of a preprinted physical RFC questionnaire he completed on December 31, 2020. *Id.* at 878-81.  Dr. Opam, who indicated having treated Arokium every six to eight weeks since December 2010, reported diagnoses of "cervical and lumbosacral discogenic pain syndrome" and "left shoulder traumatic arthropathy," which caused "persistent pain with easy aggravation upon minimal exertion." *Id.* at 878. Based on these conditions, he assessed marked restrictions on Arokium's ability to work, which the ALJ characterized as "a significantly reduced range of sedentary exertion." *Id.* at 22.

Dr. Opam opined, among other things, that Arokium was incapable of "low stress" jobs due to difficulty sitting, standing, and walking for even "very short periods"; could sit ten minutes at a time and stand fifteen minutes at a time, and could sit and stand or walk less than two hours a day; and would need to take five thirty-minute breaks in an eight-hour workday. *Id.* at 879-80.  He further indicated that Arokium could use her left upper extremity to reach for five percent of the workday, and use her left hand for forty percent of the workday. *Id.* at 881.  Dr. Opam noted that his opinion applied to the period beginning on August 10, 2010. *Id.*

Dr. Kwock, an orthopedic surgeon, testified as a medical expert at the November 2020 hearing. *Id.* at 37-60.  Dr. Kwock reviewed Arokium's full medical record, including an MRI

9

of Arokium's cervical spine done in 2013 and the three physical examinations that included neurological assessments, as performed in 2010, 2011, and 2016. *See id.* at 39-44. Based on his review, Dr. Kwock concluded, Arokium had minimal degenerative disc and degenerative joint disease of the cervical spine and minimal degenerative changes of the left shoulder — what he called "relatively minor, mild afflictions" — during the relevant period. *Id.* at 39-41, 43. He assessed a far less restrictive set of limitations than Dr. Opam. He opined, among other things, that Arokium could lift and carry up to ten pounds continuously, twenty pounds frequently, and fifty pounds occasionally, but she could only frequently reach with her left upper extremity. *Id.* at 42. Dr. Opam further stated that she could sit, stand, and walk for eight hours during the workday. *Id.*

Here, a review of the record evidence demonstrates that the ALJ properly considered the opinions of Dr. Opam and Dr. Kwock, and his conclusions regarding Arokium's limitations were supported by substantial evidence.

First, ALJ Miller properly evaluated Dr. Kwock's opinion and did not err in finding it persuasive. As the ALJ noted, Dr. Kwock was the only medical professional to review all medical evidence in the record. *Id.* at 22. He supported his opinions with specific citations to the relevant records and

10

explained in detail how his findings related to the limitations he assessed, including in his responses to meaningful questioning by both the ALJ and Arokium's hearing counsel. *Id.* at 38–60; *see* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [his] medical opinion(s) . . ., the more persuasive the medical opinions or prior administrative medical finding(s) will be.").

For example, Dr. Kwock reviewed and commented on the findings and examinations of Dr. Paul Ackerman, an orthopedic physician who treated Arokium on several occasions between February 2013 and February 2016 (though not at all for an almost two-year period between June 11, 2013, and April 13, 2015). *See* Tr. 18, 43–60, 276–85. After consultative examinations in July 2015 and February 2016, Dr. Ackerman concluded that Arokium was "unable to work, 100% disabled." *Id.* at 283, 285. Dr. Kwock reviewed the results of these physical examinations, acknowledging that Dr. Ackerman had found "tenderness of the AC joints" and "positive on Neer's and Hawkins impingement signs." *Id.* at 46. But such findings, he explained, were "consistent with a very common condition that we all get that for the [] most part can be managed." *Id.*; *see id.* at 45–49. He also characterized Arokium's left shoulder range of motion as "not perfectly normal but pretty close to it." *Id.* at 46.

11

In short, Dr. Kwock concluded that Arokium's left shoulder and cervical spine conditions were "relatively mild" and "minor" during the relevant period, and would not have significantly limited her ability to function on a daily basis. *Id.* at 41. And as the ALJ reasonably determined, Dr. Kwock's assessment was consistent with his summary of the medical record. *Id.* at 22.

The ALJ also did not err in finding that Dr. Opam's opinions were "not consistent with or supported by the record as a whole." *Id.* As the ALJ noted, the temporal scope of and basis for Dr. Opam's opinion was less than clear. Dr. Opam filled out the assessment in December 2020 and indicated that the "limitations in [the] questionnaire" applied since August 2010, *see id.* at 881 — even though the relevant period here is only August 13, 2013 (the amended onset date, given the Commissioner's prior decision that Arokium was *not* disabled before that date) to December 31, 2015 (her date last insured). And while Dr. Opam indicated he saw Arokium every six to eight weeks since that August 2010 date, *see id.* at 878, the ALJ correctly observed that "he saw her only infrequently during the period at issue, with only two visits documented during the entirety of the year 2015, and with no visits at all during the years 2013 and 2014." *Id.* at 22, 626, 629. The ALJ was

12

entitled to consider that gap in treatment in assessing the supportability of Dr. Opam's conclusions.

This uncertainty is compounded by the nature of Dr. Opam's opinion: while he provided some explanation as to the clinical findings underpinning his opinion, his assessment primarily took the form of a checkbox and fill-in-the-blank questionnaire. *Id.* at 878-81. As numerous courts have observed, such standardized checkbox forms have "limited value" and are "'only marginally useful for purposes of creating a meaningful and reviewable factual record.'" *Sabater v. Colvin*, No. 12-CV-4594, 2016 WL 1047080, at *5 n.6 (S.D.N.Y. Mar. 10, 2016) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2d Cir. 2004)); *see, e.g.*, *Llorens-Feliciano v. Astrue*, No. 11-CV-924, 2012 WL 6681772, at *3 (N.D.N.Y. Dec. 21, 2012) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Unlike Dr. Kwock, Dr. Opam offered little to no explanation as to how or why the clinical findings he cited compelled the limitations that he assessed.

The ALJ also noted inconsistencies between Dr. Opam's significant restrictions and other evidence in the record, as well as his own treatment notes. See 20 C.F.R. § 404.1520c(c)(2). For example, Dr. Opam assessed restrictions in Arokium's ability to reach with her right arm, *see* Tr. 881,

13

but his own treatment notes and those of other providers only indicate left shoulder impairment.  *See id.* at 22, 280-83, 582, 626, 629.  And while Dr. Opam opined that her impairments would frequently interfere with her attention and concentration, such that she could not perform even "low stress" jobs during the relevant period, *see id.* at 879, the ALJ found such restrictions unsupported by his own two treatment notes from 2015, which included no references to these limitations.  *Id.* at 22.  Finally, the ALJ noted that Dr. Opam's severe restrictions were inconsistent with Arokium's conservative course of treatment, which included home exercises, Motrin, and a prescription pain-relieving cream.  *Id.* at 23; *see, e.g., id.* at 411, 638-39.

Arokium faults the ALJ for not finding Dr. Opam's opinion consistent with the findings of Dr. Ackerman, who concluded in 2015 that she was "totally disabled."  *See* Pl. Mem. 10-11.  It is axiomatic, however, that a finding of disability is the ultimate legal issue "expressly reserved to the Commissioner."  *Snell v. Apfel*, 177 F.3d 128, 133-34 (2d Cir. 1999).  And Dr. Ackerman's statements appear to have been made in the context of Arokium's worker compensation claim, which implicates standards for disability "entirely distinguishable" from those used for Social Security disability benefits.  *See, e.g., Naumov v. Comm'r of Soc. Sec.*, 539 F. Supp. 3d 273, 275 (E.D.N.Y. 2021).  In any case, as discussed above, Dr. Kwock

14

explained in detail how Dr. Ackerman's conclusions were not supported by the objective medical record. Dr. Ackerman's unsupported findings therefore do not make Dr. Opam's opinion any more persuasive.

More fundamentally, Arokium contends that the ALJ incorrectly credited the opinion of a non-examining medical expert over that of her treating neurologist. *See* Pl. Mem. 11- 14. But this argument misapprehends the ALJ's consideration of the entire record under the current regulations, which provide that the Commissioner "no longer needs to assign particular evidentiary weight to treating sources or their opinions." *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at \*6 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted sub nom. Vellone ex rel. Vellone v. Saul*, No. 20-CV-261, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). Even under the treating physician rule, the Second Circuit recognized that "opinions of nonexamining sources [can] override treating sources' opinions provided they are supported by evidence in the record." *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995); *see also Garcia v. Colvin*, No. 14-CV-4798, 2015 WL 4603422, at \*6 (E.D.N.Y. July 30, 2015) ("[W]here the medical adviser who is a specialist in the area gives a medically informed, pointed, and responsive rebuttal to the treating physicians' conclusions, then unless the federal court can find

15

something obviously lacking in that rebuttal, it is hard to disagree with the ALJ's determination to accept it.").[4]

Here, the ALJ properly discussed the "most important factors" of supportability and consistency for each opinion, see 20 C.F.R. § 404.1520c(b)(2), and crafted an RFC in light of the evidence as a whole. Where Dr. Opam's and Dr. Kwock's opinions conflicted, the ALJ was entitled to "choose between [those] properly submitted medical opinions." *Balsamo*, 142 F.3d at 81; *see also Herrera v. Comm'r of Soc. Sec.*, No. 20-CV-7910, 2021 WL 4909955, at *9 (S.D.N.Y. Oct. 21, 2021) (upholding ALJ's determination which "noted and discussed" conflicting medical evidence and "arrived at a decision based on the record as a whole"). And contrary to Arokium's assertion, in making the RFC assessment, the ALJ considered not only these two opinions, but also the medical record evidence, her descriptions of her limitations, and the sporadic and conservative nature of her treatment during the relevant period. Tr. 17–23; *see, e.g.*, *Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (ALJ properly discounted subjective complaints based on prescribed "conservative treatment" regimen); *Femminella v. Comm'r of Soc.*

---

[4] "As a general matter, an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Madera v. Comm'r of Soc. Sec.*, No. 20-CV-1459, 2021 WL 4480656, at *3 n.5 (E.D.N.Y. Sept. 30, 2021).

16

*Sec.*, 524 F. Supp. 3d 20, 22 (E.D.N.Y. 2021) (ALJ properly discounted complaints based on gaps in medical treatment and collecting cases).

Ultimately, "whether there is substantial evidence supporting [Arokium's] view is not the question[]; rather, [the court] must [only] decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Thus, even if "the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). That is the case here.

### IV. Conclusion

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies Arokium's motion. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

                                                /s/ Eric Komitee_____
                                                ERIC KOMITEE
                                                United States District Judge

Dated:   September 29, 2023
              Brooklyn, New York